IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RUSSEL CAMPBELL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:14-CV-399 |
| | § | |
| LAMAR INSTITUTE OF | § | |
| TECHNOLOGY, REBECCA COLE, | § | JURY TRIAL DEMANDED |
| VIVIAN JEFFERSON, BETTY | § | |
| REYNARD, and GWEN WALDEN, | § | |
| | § | |
| *Defendants*. | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Russel Campbell, (hereafter "Plaintiff" or "Campbell"), files this Original Complaint complaining of the Lamar Institute of Technology, Betty Reynard, Rebecca Cole, and Gwen Walden (hereinafter referred to collectively as "Defendants"), and would show the Court as follows:

## STATEMENT OF CLAIMS

1. Plaintiff Russel Campbell complains of Defendants' violations of Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. §§12131-12134, as they pertain to Defendants Rebecca Cole, Vivian Jefferson, Betty Reynard, and Gwen Walden in their official capacities; and violations of Section 504 of the Rehabilitation Act ("Section 504"), as they pertain to Defendant Lamar Institute of

Technology, and Betty Reynard, Vivian Jefferson, Rebecca Cole, and Gwen Walden, in their official capacities, for discrimination against Mr. Campbell and denial of equal access to educational opportunities at Lamar Institute of Technology.  Defendants failed to provide reasonable accommodations for Mr. Campbell, engaged in direct discrimination, and maintain policies that fail to protect students with disabilities from discrimination, all in violation of the law.

2. Plaintiff seeks injunctive and declaratory relief, compensatory damages, attorney's fees, and litigation expenses.

## JURISDICTION AND VENUE

3. This action is brought pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act.  Jurisdiction is conferred on this court by 28 U.S.C. Section 1331, 28 United States Code Section 1343 (civil rights).

4. Venue is appropriate and proper in this cause in the Eastern District of Texas pursuant to 28 U.S.C. §1391(a) (1) as at least one (1) of the Defendants currently resides, or is located within, the Eastern District of Texas at the time of filing this suit, as well as under 28 U.S.C §1391(a)(2) because all or a substantial part of the events which gave rise to this cause of action occurred in the Eastern District of Texas.

## PARTIES

5. Plaintiff Russel Campbell, 45, is a natural person and a resident of Jefferson County, Texas. He is a qualified individual with a disability as defined by federal law, Title II of the ADA, Section 504 of the Rehabilitation Act, in that he suffered serious head injury after a fall in 2009 that resulted in eight hours of unconsciousness. As a result of his disability, Mr. Campbell requires reasonable educational accommodations. Mr. Campbell was a student in good standing at the Lamar Institute of Technology beginning in the Fall 2012 semester when he applied for educational accommodations with the appropriate physician documentation, but was ultimately denied his reasonable accommodation request and forced to leave the program in the Fall 2013 semester.

6. Defendant Lamar Institute of Technology ("LIT") is an educational entity, and a public entity within the meaning of Title II of the ADA, and recipient of federal funding for purposes of Section 504. LIT may be served with process herein by serving its President **Dr. Paul Szuch, President's Office, Cecil Beeson Building; Room 249, 855 East Lavaca; Beaumont, Texas 77705**.

7. Defendant Rebecca Cole in her official capacity as Special Populations Coordinator, Student Services, is the designated Special Populations Coordinator for the university and is responsible for ensuring all university policies and practices comply with applicable disability laws, evaluating student

accommodation requests and administering policies for recommended accommodations, and has a legal duty to ensure that the LIT does not discriminate against individuals with disabilities.  Defendant may be served process at: **Special Populations Office, Cecil Beeson Building; 855 East Lavaca; Beaumont, Texas 77705**.

8. Defendant Dr. Vivian Jefferson in her official capacity as Vice President of Student Services has a legal duty to ensure that the LIT does not discriminate against individuals with disabilities.  Defendant may be served process at: **Student Services Office, Cecil Beeson Building; Room 116A, 855 East Lavaca; Beaumont, Texas  77705**.

9. Defendant Dr. Betty Reynard in her official capacity as Vice President of Academic Affairs and Workforce Development has a legal duty to ensure that the LIT does not discriminate against individuals with disabilities.  Defendant is a public entity within the meaning of Title II of the ADA, and a recipient of federal funding for purposes of Section 504.  Defendant may be served process at: **Academic Affairs Office, Cecil Beeson Building; Room 231, 855 East Lavaca; Beaumont, Texas  77705.**

10. Defendant Gwen Walden in her official capacity as Respiratory Therapy Program Coordinator / Instructor II requests and administering policies for recommended accommodations, and has a legal duty to ensure that the LIT

does not discriminate against individuals with disabilities. Defendant may be served process at: **Multi-Purpose Center; Room 239, 802 East Lavaca; Beaumont, Texas  77705.**

## STATEMENT OF FACTS

11. Plaintiff, Russel Campbell, has an AAD Paramedic Degree. Mr. Campbell suffers from Crohn's disease and required an emergency small bowel transection and jejunostomy. He was comatose for two months and in the hospital for six months. After coming home, Mr. Campbell suffered a seizure, fell, and hit his head resulting in about 8 hours of confusion or loss of consciousness. As a result, Mr. Campbell can no longer practice in the field of EMS.

12. In the summer of 2012, Mr. Campbell decided to return to school, although he was afraid to do so with a learning disability. Mr. Campbell selected LIT because he had been an EMS Instructor there for four years, personally knew many members of the faculty and staff, and felt safe there. Mr. Campbell underwent a neuropsychological evaluation to determine the extent to which his disability would impact his continuing education. The results showed cognitive difficulties including verbal memory, fluency, and concentration difficulty, and provided sample accommodations including but not limited to untimed tests and access to lecture notes.

13.     Shortly after the results of his neuropsychological evaluation, Mr. Campbell registered with LIT's Special Populations to gain access to the reasonable accommodations he needed as recommended by his doctor.  Rebecca Cole was his main contact person in Special Populations.  When Mr. Campbell first registered with Special Populations and at every time thereafter, Ms. Cole behaved as if she was in a hurry and threw whatever paperwork he gave her into a folder without reading it.

14.     In fall of 2012, Mr. Campbell began his pre-requisite courses for Respiratory Care Program student at LIT.  During the fall 2012 semester, Mr. Campbell had an Anatomy and Physiology instructor, Ms. Stephanie Lanoue, who worked with him to find his weak spots so that Mr. Campbell would know how to study.  Ms. Lanoue had Mr. Campbell take his exam with the class, then a week or two later take a different version of the exam and score 30 points higher without much more preparation time.  They came to the conclusion that Mr. Campbell needed additional time to prepare for tests because it took longer for the material to pass to his long-term memory.

15.     At the end of the Fall 2012 semester, Ms. Lanoue wrote a letter, essentially mirroring the results of Mr. Campbell's neuropsychological evaluation, stating what she and Mr. Campbell had discovery and how Mr. Campbell could be reasonably accommodated.

16. At the end of the Fall 2012 semester, Mr. Campbell took this letter to Ms. Cole to let her know of the effective accommodations identified for him. Ms. Cole refused to read Ms. Lanoue's letter or accept it. Ms. Cole told Mr. Campbell that the instructors that had worked with him that semester were wrong for doing so, and had they asked her, she would have told them that what they were doing was above and beyond the law. Ms. Cole told Mr. Campbell that she couldn't help him and that it was up to the individual instructors to decide if they would accommodate him or not. Ms. Cole told Mr. Campbell that if she made those kinds of accommodations for him, she would have to do the same for everyone who came through special populations. Ms. Cole told Mr. Campbell that all she would recognize were the recommendations made in Mr. Campbell's neuropsychological evaluation.

17. Mr. Campbell's other instructors, Ms. Delana Stephenson, Mr. David Hooker, and Mr. Andrew Garza, incorporated the accommodations suggested in Ms. Lanoue's letter and recognized that Mr. Campbell's ability is greater than his disability. Through their accommodations and Mr. Campbell's hard work, Mr. Campbell was able to maintain a 4.0 GPA in the Fall of 2012 and Spring of 2013.

18. Mr. Campbell was told by Dr. Vivian Jefferson that Section 504 did not apply and was not relevant because it would be illegal to give him extra time to study because that would give him an advantage over the other students in the

program. Staff at LIT even told Mr. Campbell that Section 504 only applies for grades K-12.

19. Mr. Campbell approached instructors in the Respiratory Care Program starting in June of 2013, Ms. Gwen Walden, Ms. Cynthia McKinley, and Ms. Stacie Taylor, seeking help because he was struggling in Ms. McKinley's class with the same documentation he brought Ms. Cole, Ms. Lanoue's letter and his neuropsychological evaluation. Mr. Campbell was told that what he requested was above and beyond the law and that they did not have to do what he requested. However, Ms. Walden told Mr. Campbell that if he could produce the same documentation from his doctor that verified Ms. Lanoue's letter, there would be no problem accommodating him.

20. In the middle of the Fall 2013 semester, Mr. Campbell missed around six (6) straight days and one test in each of his classes. Mr. Campbell sent numerous texts and emails notifying Ms. McKinley and Ms. Walden of his absences. When Mr. Campbell brought in the requested accommodation letter, Ms. Walden told Mr. Campbell that because he had produced the supporting documentation, there would be no problem in giving him extra study time. At that time, Mr. Campbell and Ms. Walden arranged for a test make-up on a Thursday.

21. Mr. Campbell received an email from Ms. Walden on Wednesday informing him that she would meet with him on Thursday around 2:00 p.m. Mr.

Campbell was under the impression the meeting was his time slot to take a make-up test.

22.   When Mr. Campbell arrived at the meeting, Ms. Walden, Ms. McKinley, Ms. Taylor, and an unidentified scribe were there.  They immediately blindsided him with everything they could dig up to keep them from having to comply with his request for reasonable accommodations.  Again, Mr. Campbell was told Section 504 does not apply.  Ms. Walden stated that the color of Mr. Campbell's skin scares her and makes her nervous in class.  The meeting was unlawful as there were no upper level supervisors present and coincidentally, the actual minutes of the meeting have never surfaced.

23.   In trying to obtain his reasonable accommodations, Dr. Vivian Jefferson very clearly told Mr. Campbell that he had no other choice than to withdraw from his degree plan in order to salvage his GPA.

24.   Due to the extreme embarrassment and humiliation of the meeting and his continual and intentional discrimination at the hands of faculty and staff at LIT, Mr. Campbell withdrew under protest from LIT.  Since that time, Mr. Campbell has suffered severe mental stress and emotional stress that have manifested in physical symptoms.

## CAUSES OF ACTION

### I.      Violations of Title II of ADA

25.    Title II, ADA, governs public entities, defined as "any department, agency, special purpose district, or other instrumentality of a State or local government[,]" 42 U.S.C. §12131(1)(a), and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. §§12131-12134; 28 C.F.R. Part 35 § 35.101 *et seq.*

26.    Title II imposes an affirmative obligation upon public entities to make reasonable accommodations for disabled individuals. *Bennett-Nelson v. Louisiana Board of Regents,* 431 F.3d 448, 454-55 (5th Cir. 2005), cert. denied, 126 S. Ct. 1888 (2006).

27.    Mr. Campbell was both a qualified and exemplary student, but for his need for reasonable accommodations due to his disability.

28.    Defendants discriminated against Mr. Campbell by failing to provide him with reasonable accommodations that were supported by physician documentation and teacher recommendation in violation of Title II. Defendants imposed unduly burdensome documentation requirements on Mr. Campbell, and when he met their requests, still denied accommodation.

29. Defendants further engaged in direct discrimination by ambushing Mr. Campbell, insulting, bullying, and harassing him because of his disability.

30. Defendants' policies, procedures, or practices granting professors discretion to deny reasonable accommodations do not comply with the following federal regulations:

   a. 28 C.F.R. §35.130(b)(7) requiring a public entity to make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability.

   b. 28 C.F.R. §35.130(b)(3) prohibiting methods of administration that have the effect of discriminating against individuals with disabilities or purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the public entity's program with regards to individuals with disabilities.

   c. 28 C.F.R. §35.164(a) requiring the head of a public entity, or her/his designee, to consider all the available resources before reaching conclusions about reasonable accommodation and provide a written statement of the reasons for reaching that conclusion.

   d. 28 C.F.R. §35.164 requiring public entities that deny reasonable accommodation to take alternative actions that ensure, to the maximum

extent possible, that individuals with disabilities receive benefits or services provided by the entity.

## II. Section 504, Rehabilitation Act of 1973

31. Mr. Campbell is a qualified person who, solely because of his disability, was excluded from a program or activity that receives Federal financial assistance within the meaning of Section 504. 29 U.S.C. §794(a).

32. Section 504 imposes an affirmative obligation upon public entities to make reasonable accommodations for disabled individuals. *Bennett-Nelson,* 431 F.3d at 454-55. Defendants discriminated against Mr. Campbell by failing to provide him with reasonable accommodations that were supported by physician documentation and teacher recommendation in violation of Section 504.

33. The regulations under Section 504 specifically address the need and the method for providing reasonable accommodations.

34. Defendants' policies, procedures, or practices that authorize professor discretion to deny reasonable accommodations fail to comply with the following federal regulations:

   a. 34 C.F.R. §104.4(b)(1) which prohibits the discriminatory action of affording a person with a disability an opportunity to participate in a service that is not equal to that afforded to others.

  b. 34 C.F.R. §104.4(b)(4) which requires recipients to not use methods of administration that have the effect of discriminating against individuals with disabilities or that have the purpose or the effect of defeating or substantially impairing the accomplishment of the objectives of the public entity's program with regards to individuals with disabilities.

  35. The rights and remedies under Section 504 are the same as Title II, ADA, for claims involving academic accommodations. The allegations under Title II of the ADA, described above, therefore are herein incorporated under Section 504 and extend to all Defendants.

## COMPENSATORY DAMAGES

  36. Plaintiff seeks compensatory damages for intentional discrimination against him by Defendants. *Delano-Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir. 2002). On multiple occasions between the end of Spring 2013 and the middle of October 2013, Mr. Campbell made his request for reasonable accommodations with staff and faculty at LIT. He was consistently rebuffed, ignored, or dismissed on incredulous grounds such as, "Section 504 doesn't apply to you and is not relevant because it would be illegal to give you extra time to study because that would give you an advantage over the other students in the

program," and "If we make those accommodations for you, we would have to do it for everyone who came through special accommodations."

37. LIT has a Special Populations Office specifically designed to be the key resource and advocate for providing accommodations. By intentionally turning away from their mission and by intentionally refusing to provide reasonable accommodations, LIT has intentionally discriminated against Mr. Campbell.

38. In addition, the discrimination took the form of direct insults and harassment that go directly heart of the stereotyping and disdain made unlawful by the ADA and the Rehabilitation Act. Due to the extreme embarrassment and humiliation of the meeting and his continual and intentional discrimination at the hands of faculty and staff at LIT, Mr. Campbell has suffered and continues to suffer severe mental and emotional distress that have manifested in physical symptoms.

## INJUNCTION

39. Plaintiff and others with physical disabilities will continue to experience unlawful discrimination as a result of Defendants' violations of, and failures to comply with, the law.

40. Plaintiff and other students with disabilities will suffer irreparable harm if injunctive relief is not granted. As such, injunctive relief is necessary to

order Defendants to ensure that, at the Lamar Institute of Technology, by practice and policy: 1) students with disabilities are provided with reasonable accommodations as recommended by physicians or appropriate persons; 2) faculty and staff receive remedial training in the selection and execution of reasonable accommodations; and 3) provide reasonable accommodations to qualified students with disabilities cannot be denied at the discretion of individual faculty members.

## DECLARATORY JUDGMENT

41. Plaintiff is entitled to a declaratory judgment concerning Defendants' violations of the ADA and Section 504, as set forth above, and further specifying his rights and the rights of other students with disabilities at the Lamar Institute of Technology to: 1) receive reasonable accommodations as recommended by physicians or appropriate persons; 2) receive reasonable accommodations that cannot be denied by the discretion of individual faculty members; and 3) require faculty and staff members receive remedial training in the selection and execution of reasonable accommodations.

## ATTORNEY'S FEES AND COSTS

42. Plaintiff is entitled to reasonable attorney's fees, litigation costs, and court costs, as allowed by the ADA, 42 U.S.C. §12133, and as allowed by Section 504 of the Rehabilitation Act, 29 U.S.C. §729(a).

## **PRAYER FOR RELIEF**

Plaintiff therefore respectfully requests that the Court:

A. Issue a permanent injunction to Defendants, including its agents, servants, employees, and persons acting in concert with them, directing that the Lamar Institute of Technology must: 1) Provide reasonable accommodations as recommended by physicians or appropriate persons; 2) Provide a one-time remedial training course for faculty and staff in the selection and execution of reasonable accommodations in addition to whatever disability training is currently required; and 3) Remove policies or practices of giving discretion to individual faculty members to deny reasonable accommodations.

B. Enter a declaratory judgment, specifying Defendants' violations of the ADA and Section 504, and declaring Plaintiffs' rights to: 1) be given reasonable accommodations as recommended by physicians or appropriate persons; 2) require that faculty and staff attend a one-time remedial training course provided by Defendants in the selection and execution of reasonable accommodations in addition to whatever disability training is currently required; and 3) Be given reasonable accommodations that cannot be denied at the discretion of individual professors.

C. Award Plaintiff Compensatory damages for Defendants' intentional discrimination against Plaintiff;

D. Award Attorney's fees, litigation expenses, pre and post-judgment interest, costs; and

E. All other relief to which Plaintiff may be entitled.

**DATE:** August 1, 2014.

Respectfully submitted,

WATTS & COMPANY LAWYERS, LTD.

/s/ *Laurence Watts*
Laurence Watts
State Bar No. 20981000
Federal I.D. 7092
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorneys for the Plaintiff*

**TRIAL BY JURY DEMANDED**